## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| GREGORY GAUBATZ, | : | Case No. 3:19-cv-114 |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | District Judge Walter H. Rice |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

I.   **Introduction**

Plaintiff Gregory Gaubatz brings this case challenging the Social Security

Administration's partial denial of his applications for period of disability, Disability

Insurance Benefits, and Supplemental Security Income.  He applied for benefits on

February 5, 2016, asserting that he could no longer work a substantial paid job due to

post-traumatic stress disorder, anxiety, panic disorder, fracture of his left arm, gout,

arthritis, crippled fingers on his right hand, dyslexia, ADHD, and memory loss.  After his

applications were denied initially and upon reconsideration, Plaintiff was provided a

hearing before Administrative Law Judge (ALJ) Deborah F. Sanders.  On July 27, 2018,

ALJ Sanders issued a partially favorable decision concluding that Plaintiff was not under

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

a disability as defined in the Social Security Act prior to April 10, 2017 but became disabled on that date.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #6), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #5).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Sanders's non-disability decision.

## II.   Background

Plaintiff asserts that he has been under a disability since August 6, 2013. He was fifty-one years old at that time and was therefore considered a person "closely approaching advanced age" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(d), 416.963(d). In April 2017, Plaintiff turned fifty-five years old and was thus considered a person of "advanced age." *See id.* §§ 404.1563(e), 416.963(e). He has a limited education. *See id.* §§ 404.1564(b)(3), 416.964(b)(3).[2]

### A.    Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Sanders that he was participating in an in-patient program for post-traumatic stress disorder (PTSD) at the VA. (Doc. #5, *PageID* #s 85-86). He began the program a little less than a month before the hearing. *Id.* at 86. He spends most of his day going to medical appointments. *Id.* at 112. Plaintiff

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

took a diagnostic mental assessment on the Friday before the hearing.  *Id.* at 109.  His

doctor wanted to wait on the results before starting him on any new medications.  *Id*.

Plaintiff has tried several medications for his mental health disorders in the past.  *Id.* at

108.  Unfortunately, they have not worked.  *Id.* at 121.  At the time of the hearing, he was

taking Risperdal for anxiety.  *Id.* at 107.

This was not Plaintiff's first experience with in-patient care at the VA.  In July

2017, he was admitted to a program but after several infractions of the behavior contract,

he left.  *Id.* at 123-24.  According to Plaintiff, he was supposed to be there for treatment

of PTSD.  *Id.* at 125.  But instead, they treated him for drugs and alcohol—including

several medications.  *Id*.  Because of the medications, he felt like he was in a fog and it

messed up his body.  *Id.* at 124.  Although he reported problems with his medications and

requested changes, his request was denied because his doctor was on vacation.  *Id*.  As a

result, he stopped taking his medications.  *Id*.  When he stopped, his mind and stomach

"cleared up."  *Id.* at 125.  He left the facility in July 2017 but called them every day.  *Id*.

at 127.  They wanted him to come back but, unfortunately, he was then arrested.  *Id*.  In

January 2018, he returned to in-patient care.  *Id.* at 127-28.

Plaintiff has had some problems with alcohol for most of his life.  *Id.* at 122.  He

has nevertheless had some extended periods of sobriety.  *Id.* at 123.  Even during those

periods, he experiences symptoms of PTSD—some even worse (although he did not

know at the time that it was symptoms of PTSD).  *Id*.  Plaintiff had a driver's license, but

it was suspended because of a DWI.  *Id.* at 87.

Before he was in the in-patient program, he did not do much during the day. *Id.* at 118. He did not leave his house if he could avoid it. He "was just scared all the time." *Id.* Additionally, in the past five years, Plaintiff has found himself getting confused easily. *Id.* He could not remember if he completed seventh grade; he does remember attending seventh grade. *Id.* at 88.

Plaintiff joined the Navy in 1979 and was discharged in 1982. *Id.* at 88. As part of his service, he was on a boat during several hurricanes or large storms. *Id.* at 119. During that time, he watched one person die. *Id.* He also found an officer who had been murdered. *Id.* It was a very intense experience for him. *Id.* In 2005 and 2006, he worked as a contractor in Iraq. *Id.* at 88-89.

Plaintiff was a caregiver for his father while he was dying. *Id.* at 97. Plaintiff took care of him for less than a year before he passed away. *Id.* He cooked for his father and fed him. *Id.* at 114. Hospice took care of bathing and changing him. *Id.* at 113. They also loaded his medications so that all Plaintiff had to do was make sure he took them. *Id.* at 114. When Plaintiff's father died, Plaintiff started to have a breakdown. *Id.* at 97. He had panic attacks related to his PTSD. *Id.* at 97-98. Shortly thereafter, Plaintiff became the caregiver for an eighty-seven-year-old friend until she died. *Id.* at 97. When they died, all of his feelings from the trauma of his military service came back to him "in a flood." *Id.* at 119. He has intrusive thoughts "[e]very minute right now." *Id.* at 120.

Plaintiff has gout. *Id.* at 100. He takes medication—allopurinol—to prevent having a severe attack. *Id.* at 107. He also takes pain medication and a muscle relaxer.

4

*Id.*  Plaintiff had a minor gout flare up at the time of the hearing that had been going on for a month.  His feet were swollen, he had tingling pain, and his pain sometimes felt like a knife.  *Id.* at 100.  When his pain is really bad, he has to use a cane to walk and has needed a wheelchair in the past.  *Id.* at 101.

Plaintiff has several additional physical impairments.  He has plantar fasciitis.  *Id.*  He has neuropathy in his hands and feet that causes them to sometimes feel numb.  *Id.*  He has cellulitis that causes swelling in his legs.  *Id.* at 102.  He has pins and screws in his left elbow from a previous fall and surgery.  *Id.* at 99.  Recently, he fell again and "[i]t all got scrambled around."  *Id.*  His right shoulder is dislocated and as a result, he is losing range of motion and muscle mass.  *Id.* at 103-04.  His pain goes down his arm, across his neck, and down his back.  *Id.* at 104.  He has stinging pain between his shoulder blades.  He cannot turn his head from side to side because it hurts too bad.  *Id.*  Plaintiff has problems with arthritis in both his knees.  *Id.* at 103.  His left knee bothers him every day and his right knee only bothers him sometimes.  *Id.*  He has two crippled fingers on his right hand from about twenty years before the ALJ's hearing when doctors had to cut his tendons and sew them back together.  Unfortunately, because of scar tissue, his fingers did not heal.  *Id.* at 99-100.

### B.      Medical Opinions

#### i.      *Dong Moon, M.D.*

Dr. Moon, Plaintiff's treating psychiatrist at the Veterans Affairs (VA) Hospital, first saw him in June 2015 for PTSD and depression.  *Id.* at 508-12.  Dr. Moon provided a helpful summary of the Plaintiff's difficult history:

> He served in the Navy from October 1979 to February 1982.
> He was deployed to Iraq for about two months from 2005 to
> 2006.  He was a gunner's mate and received a general
> discharge with honorable condition….
> There was a traumatic event in 1989.  He witnessed a death in
> Pearl Harbor where a sailor was sucked into a manifold under
> water and he participated in pulling the dead body out of the
> water.  In 1982 in Hawaii, a sailor on deck had disappeared
> and was found dead behind a door and badly injured.
> When he was in Iraq, he was fearful of explosions of mortar
> and rocket attacks.  One mortar landed near him but it did not
> detonate.
> During his childhood he was abused and neglected.  Also
> beaten in the street by other kids.  He also got involved in
> numerous fights [on] the street.  He had to have his face
> reconstructed.  His left arm was injured.  He was assaulted
> with weapons.

*Id.* at 508-509.

Dr. Moon noted that Plaintiff reported that he has always been anxious and

depressed but both had gotten worse since his father died.  *Id.* at 509.  He also described

signs and symptoms of PTSD related to his military trauma.  For instance, he has

intrusive thoughts on a daily basis and nightmares of the dead sailor; he has lost interest

in activities that he used to enjoy; he gets angry and depressed; he is hypervigilant; he

gets startled easily; he gets paranoid with people and feels that they are going to attack

him; and he hears a voice calling his name and faint music sounds when he is in bed

trying to go to sleep.  *Id.*

Dr. Moon indicated that Plaintiff presented as mildly to moderately agitated.  *Id.* at

512.  His mood was described as "staying depressed."  *Id.*  His affect appeared to be

moderately anxious with some agitation, slightly irritable, and not labile.  Dr. Moon

noted that Plaintiff has been treated from time to time at the Dayton VA but has not been

consistent with treatment since 2011. He continued to show active symptoms of PTSD and depression. *Id.*

Plaintiff returned to Dr. Moon in August 2015 for follow-up. He reported that after taking medications, he felt calmer and less hypervigilant. *Id.* at 498. However, he was still having problems sleeping. *Id.* His affect was stable, appropriate, and full range. *Id.* at 501. His mood was anxious. *Id.* Dr. Moon opined that Plaintiff had a "slight improvement in mood and anxiety." *Id.* at 503. He was "stilled depressed but improving." *Id.*

In September 2015, Plaintiff reported that he still gets anxious when he leaves the house. *Id.* at 492. Dr. Moon indicated that Plaintiff had intrusive recollections and traumatic nightmares. *Id.* He was in a persistent negative emotional state—anger. *Id.* He had poor memory and low interest and social activity. *Id.* at 493. Dr. Moon opined that Plaintiff "is not able to engage in gainful employment. He has been considered totally disabled." *Id.* at 497.

In November 2015, Plaintiff reported to Dr. Moon that he was sometimes scared of leaving the house and still felt anxious and depressed at times. *Id.* at 477. He had low interest and social activity. *Id.* at 478. He had poor memory and sleep. *Id.* In January 2016, Dr. Moon noted that Plaintiff continued showing symptoms of PTSD and depression. *Id.* at 470. In May 2016, Dr. Moon found that Plaintiff had low social activity and poor concentration and memory. *Id.* at 458-59. Plaintiff's PTSD was improving but he was still symptomatic. *Id.* at 462.

ii.    *Juliette Savitscus, Ph.D., & Joseph Edwards, Ph.D.*

In May 2016, Dr. Savitscus reviewed Plaintiff's records on behalf of the state agency. *Id.* at 13950. She opined that Plaintiff had moderate restrictions in his activities of daily living; moderate difficulties in social functioning; moderate limitations in concentration, persistence and pace; with no episodes of decompensation of extended duration. *Id.* at 144. He retains the ability to understand, remember, and perform one to three step tasks with no high pace or production quotas in an environment with infrequent changes that can be explained. *Id.* at 147-48. Dr. Savitscus concluded that Plaintiff can interact briefly and occasionally in situations that do not require more than superficial contact with coworkers and supervisors, no contact with the general public, and no resolving conflicts or persuading others to follow demands. *Id.* at 148.

In July 2016, Joseph Edwards, Ph.D. reviewed the record upon reconsideration and affirmed Dr. Savitscus' opinion. *Id.* at 168-80.

## III. <u>Standard of Review</u>

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

9

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47

(6th Cir. 2004)).

## IV.   <u>The ALJ's Decision</u>

As noted previously, it fell to ALJ Sanders to evaluate the evidence connected to

Plaintiff's applications for benefits.  She did so by considering each of the five sequential

steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  She

reached the following main conclusions:

Step 1:   Plaintiff has not engaged in substantial gainful employment since August 6, 2013.

Step 2:   He has the severe impairments of gout, separation and arthritis of the right shoulder, depressive disorder, anxiety disorder, post-traumatic stress disorder, and polysubstance abuse.

Step 3:   He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:   His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … with the following additional limitations:  no climbing of ladders, ropes and scaffolds; occasional overhead reaching with the right upper extremity; use of a cane to ambulate with the dominant hand 3-5 times a year for up to a week at a time; no work at unprotected heights, around dangerous machinery or operating a motor vehicle; only simple, routine 1-3 step tasks but not at a production rate pace or with strict production quotas; occasional interaction with coworkers and supervisors but no shared or tandem tasks beyond orientations; no over the shoulder supervision; no interaction with the general public; no job duties requiring supervision of others or requiring resolution conflict; can adapt to infrequent changes that can be easily explained; and the individual may be absent 5-8 days a year for flare ups of gout."

Step 4:   He is unable to perform any of his past relevant work.

Step 5:    Prior to April 10, 2017, he could perform a significant number of jobs that exist in the national economy.  Beginning on April 10, 2017, there are no jobs that exist in significant numbers in the national economy that Plaitiff could perform.

(Doc. #5, *PageID* #s 52-67).  These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability prior to April 10, 2017 but became disabled on that date.  *Id.* at 66.

## V.    <u>Discussion</u>

Plaintiff contends that the ALJ reversibly erred in assessing his residual functional capacity, improperly evaluated the medical source opinions, and failed to carry the Step-Five burden.  The Commissioner maintains that substantial evidence supports the ALJ's decision.

Residual functional capacity (RFC) "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  Soc. Sec. R. 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996).  The ALJ is responsible for assessing a claimant's residual functional capacity.  *See* 20 C.F.R. § 404.1526(c).

The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any

> material inconsistencies or ambiguities in the evidence in the
> case record were considered and resolved.

Soc. Sec. R. 96-8P, 1996 WL 374184, at *7 (footnote omitted).

Plaintiff takes issue with the ALJ's assessment of the record-reviewing psychologists' opinions and his mental residual functional capacity.  The psychologists opined that Plaintiff can interact briefly and occasionally in situations that do not require more than superficial contact with coworkers and supervisors, no contact with the general public, and no resolving conflicts or persuading others to follow demands.  (Doc. #5, *PageID* #148).  After summarizing their opinions, the ALJ assigned them "great weight" because they are "consistent with progress notes and the claimant's subjective complaints of social anxiety, memory and concentration issues and easy confusion."  *Id.* at 64. Without explaining why she did not adopt their entire opinions, the ALJ concluded that Plaintiff was limited to occasional interaction with coworkers and supervisors but no shared or tandem tasks beyond orientation, no over the shoulder supervision, no interaction with the general public, and no job duties requiring supervision of others or requiring resolution of conflicts.  *Id.* at 57.

Plaintiff emphasizes that although the ALJ assigned "great weight" to the opinions of Dr. Savitscus and Dr. Edwards, the ALJ did not incorporate all of their limitations into her RFC assessment and did not explain why she left some out.  Specifically, the ALJ left out the record-reviewing psychologists' limitation to brief and superficial contact with co-workers and supervisors.

The Commissioner asserts that Plaintiff's argument has been rejected by the 6th

Circuit in *Reeves v. Comm' of Soc. Sec. Admin.*, 618 F. App'x 267, 275 (6th Cir. 2015).

The Court held, "Even where an ALJ provides 'great weight' to an opinion, there is no

requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the

ALJ required to adopt the state agency psychologist's limitations wholesale." (citing

*Harris v. Comm'r of Soc. Sec. Admin.,* No. 1:13–CV–00260, 2014 WL 346287, at *11

(N.D. Ohio Jan. 30, 2014)).

       Indeed, the Commissioner is correct that an ALJ is not required to parrot medical

opinions verbatim.  *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir.

2009).  But when the ALJ assigns great weight to an opinion because it is consistent with

the record, the ALJ must incorporate the opined limitations or provide an explanation for

declining to do so.  *See Queen v. Comm'r of Soc. Sec.*, No. 2:16-cv-1082, 2017 WL

6523296, at *9-10 (S.D. Ohio Dec. 21, 2017) (Deavers, M.J.), *Report and

Recommendations adopted*, No. 2:16-cv-1082, Doc. #21 (Jan. 9, 2018) (Graham, D.J.)

(remanding where the ALJ "failed to include at least one limitation" from an opinion he

had assigned great weight without explaining the omission).  The ALJ's failure to provide

such an explanation requires remand because it prevents this Court from conducting

meaningful review to determine whether substantial evidence supports her decision.  *See

Cooper v. Comm'r of Soc. Sec.*, 2:18cv67, 2018 WL 6287996 (S.D. Ohio Dec. 3, 2018)

(Vascura, M.J.), *Report and Recommendations adopted*, 2019 WL 95496 (Jan. 3, 2019)

(Smith, D.J.); *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011)

(An ALJ's decision "must include a discussion of 'findings and conclusions, and the

reasons or basis therefor, on all the material issues of fact, law, or discretion presented on

the record.'") (quoting 5 U.S.C. § 557(c)(3)(A)); *Commodore v. Astrue*, No. 10-295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) ("The ALJ must articulate the reasons for his findings, particularly when they deviate from the sources he purports to rely on.  In the context of purely conclusory statements, this Court cannot conduct a meaningful review of whether substantial evidence supports the ALJ's decision."); *Cote v. Colvin*, 16-cv-57, 2017 WL 448617, at *7 (W.D. Wisc. Feb. 2, 2017) ("On remand, the ALJ must build a logical bridge between the evidence and any social functioning limitations that he chooses to include in the residual functional capacity assessment").

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right.  *Bowen*, 478 F.3d at 746.  Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm,

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991).  Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits.  *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).  The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking.  *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking.  However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above.  On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

### IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Gregory Gaubatz was under a "disability" within the meaning of the Social Security Act prior to April 10, 2017;

3.      This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4.      The case be terminated on the Court's docket.

May 14, 2020                                              *s/Sharon L. Ovington*
                                                         Sharon L. Ovington
                                                         United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).